United States District Court
Southern District of Texas
**ENTERED**
November 02, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KYLE OLIVERIA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 4:21-CV-03564 |
| | § | |
| CITY OF JERSEY VILLAGE, | § | |
| | § | |
| *Defendant.* | § | |

### <u>MEMORANDUM & OPINION</u>[1]

Pending before the Court is Defendant City of Jersey Village's Third Motion to Dismiss, seeking dismissal of Plaintiff's Second Amended Complaint. ECF No. 42.[2] In this § 1983 action,[3] Plaintiff Kyle Oliveria claims that Jersey Village violated his Fourth Amendment constitutional right by failing to train its police force, including the police officers who responded to a domestic violence call at Plaintiff's girlfriend's apartment and arrested him without probable cause. Pl.'s Second Am. Compl., ECF No. 41 at ¶¶ 44–71.

The Court has thoroughly considered Plaintiff's second amended complaint, the briefing, and the applicable law. Because the second amended complaint failed

---

[1] On March 30, 2022, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Consent & Transfer Order, ECF No. 20.

[2] Plaintiff filed a response. ECF No. 47. Jersey Village filed a reply. ECF No. 48.

[3] 42 U.S.C. § 1983.

to plausibly allege that Jersey Village's purported failure to train or supervise constituted deliberate indifference to Plaintiff's constitutional rights or sufficiently establish a ratification theory of liability, dismissal of Plaintiff's remaining claims is warranted. Moreover, because Plaintiff's latest complaint is his third attempt to adequately state his claims,[4] the Court will not permit further amendment and dismisses with prejudice.

## I.   BACKGROUND.

On October 29, 2019, Jersey Village Police Officers Arceneaux and Hall responded to a disturbance call at an apartment located in Jersey Village, Harris County, Texas. ECF No. 41 ¶ 12. A resident of the apartment complex called the police and reported that a couple was arguing loudly and involved in a fight. *Id*. Officers knocked on the apartment door. The resident of the apartment, Plaintiff's girlfriend, answered the door. *Id*. ¶ 13. Plaintiff and his girlfriend did not have any apparent injuries, nor did they complain of any. *Id*. ¶ 14.

Another member of the Jersey Village Police Department, Corporal Boughter, arrived on the scene. *Id*. ¶ 19. In the written report Boughter filed after the incident,

---

[4] Plaintiff filed his original Complaint nearly two years ago on October 29, 2021. ECF No. 1. Defendants thereafter filed motions to dismiss, arguing that Plaintiff had failed to state a claim. ECF Nos. 7, 8. The Court gave Plaintiff leave to amend his complaint. ECF No. 26. Plaintiff then filed his First Amended Complaint. ECF No. 27. Defendants filed their second motion to dismiss, ECF No. 30, and a motion for judgment on the pleadings, ECF No. 32, again arguing that Plaintiff failed to state a claim. Relevant herein, the Court granted the motion, dismissing Plaintiff's claims against Jersey Village without prejudice, and granted Plaintiff leave to amend. On April 17, 2023, Plaintiff filed his Second Amended Complaint, ECF No. 41, and shortly thereafter, Jersey Village filed its third motion to dismiss, ECF No. 42.

he reported that he knocked loudly on the apartment door and threatened to get a warrant unless they opened the door.[5] *Id*. Plaintiff also alleges that the report contained various false statements. *Id*.[6]

At some point during the interaction, either some or all the officers interviewed Plaintiff's girlfriend outside of his presence. *Id*. ¶ 20. She advised that nothing occurred between them that required law enforcement involvement and provided a written statement to that effect. *Id*. The Officers were also made aware that Plaintiff and his girlfriend were both peace officers. *Id.* ¶ 14.

Plaintiff also alleges that the Officers were informed that the district attorney's office would not approve a state charge against him. *Id*. ¶ 23. Thereafter, the Officers "issue[d] a citation [to Plaintiff] for a municipal offense." *Id*. Furthermore, "pursuant to their agreement and policy of [Jersey Village]," the Officers placed Plaintiff in handcuffs and took him to jail. *Id*. ¶ 24. The second amended complaint states that "no criminal charges were maintained or prosecuted." *Id*. ¶ 43. Ultimately, all charges against Oliveria were dismissed. *Id*. ¶ 33.

---

[5] The Court notes that this allegation is not consistent with paragraph 13 of the second amended complaint, which alleges that Plaintiff's girlfriend greeted officers after they knocked on her apartment door. ECF No. 41 ¶ 13.

[6] For example, he alleges the report states that Plaintiff was five foot ten inches tall and weighed two hundred pounds, when, according to his complaint, he is significantly smaller than those measurements. *Id.* ¶ 19. Plaintiff also alleges that Cpl. Boughter falsely claimed that his girlfriend provided background information about him. *Id.*

The second amended complaint alleges that Jersey Village[7] violated Plaintiff's Fourth Amendment right by lacking a policy "or enforcement of any policy regarding unlawful seizures" and lacking "training in handling of domestic investigations." *Id*. at ¶¶ 39–71. Plaintiff asserts that "[a]t the time of the seizure and use of excessive and improper threats and seizure, Plaintiff had not committed any offense in the presence of Defendant'[s] officers and no reasonable grounds existed for a reasonable officer to believe that Plaintiff had committed any offense. Defendant'[s] officers did not have a warrant to enter into a private residence wherein as an invitee he had a reasonable expectation of privacy." *Id.* ¶ 61.

Plaintiff concludes that "the lack of training and supervision allowed [Jersey Village's] officers to 'target' the plaintiff a Hispanic male peace officer knowing or having reason to know of the seriousness of the impact especially due to his employment as a county law enforcement officer. . .. Had the officers been properly trained and or supervised the matter would have been most likely resolved without the need for arresting the male without any evidence of wrongdoing other than unreliable witnesses that could have desired to cause harm." *Id.* ¶ 70.

## II.  THE MOTION TO DISMISS STANDARD.

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Motions

---

[7] The second amended complaint does not reallege any of the previously asserted claims against the individual Officers. *See* ECF No. 41.

to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."
*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (cleaned up); *Duke Energy Int'l v. Napoli*, 748 F. Supp. 2d 656, 664-65 (S.D. Tex. 2010).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The complaint must include more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). A complaint must "contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *King v. Baylor Univ.*, 46 F.4th 344, 355–56 (5th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). "[A] complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) (quoting *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015)) (cleaned up).

The ultimate question "is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the

plaintiff." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)) (cleaned up).

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY.

Jersey Village argues that Plaintiff's claims asserting municipal liability ("*Monell* claims") should be dismissed for failure to state a claim. ECF No. 42. Specifically, Jersey Village contends that Plaintiff failed to make plausible allegations that show: (1) "that [Jersey Village's] final policymaker (here alleged to be the City Manager) promulgated any official policy, or was deliberately indifferent to any unofficial custom, of false arrests or illegal entries by Jersey Village police;" (2) "any widespread longstanding custom of false arrests or illegal entries by Jersey Village police;" (3) "any specific training deficiency that was the moving force of the alleged violations in this single-incident case;" or (4) that the 911 caller's eyewitness account of the Plaintiff's altercation with his girlfriend did not adequately established "probable cause to arrest [Plaintiff] for assault by contact . . . or disorderly conduct." ECF No. 42 at 10.

### A. Plaintiff's Response is Insufficient.

Plaintiff's response is inadequate, consisting only of quoted caselaw without any analysis or argument. *See* ECF No. 47. "At the motion to dismiss stage, plaintiffs must defend their claims against the movant's arguments in order to preserve those

claims." *Douglas v. Dorchester Properties Ltd.*, No. 3:22-CV-100-K-BN, 2023 WL 5156337, at *4 (N.D. Tex. May 17, 2023), *report and recommendation adopted Douglas v. Dorchester Properties Ltd.*, No. 3:22-CV-100-K-BN, 2023 WL 5155287 (N.D. Tex. Aug. 9, 2023) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (although the plaintiff tried to establish a claim in her complaint, she abandoned that claim because she did not defend it in her response to the defendant's motion to dismiss and thus "fail[ed] to pursue this claim beyond her complaint [which] constituted abandonment")); *see also Draper v. Deutsche Bank Nat'l Tr. Co. as Tr. for Saxon Asset Sec. Tr. 2007-3, Mortgage Loan Asset Backed Certificates, Series 2007-3*, No. 3:18-cv-2904-L, 2019 WL 13240973, at *7–8 (N.D. Tex. Sept. 30, 2019) (plaintiff who presented no arguments in defense of her claims in her response to the defendant's motion to dismiss abandoned her claims); *Reese v. Wells Fargo US Holdings, Inc.*, No. 3:19-cv-799-S-BK, 2020 WL 874807, at *1 (N.D. Tex. Jan. 30, 2020) (plaintiff who failed to address the arguments from the defendant's motion to dismiss in their response abandoned their claims), *report and recommendation adopted*, 2020 WL 870227 (N.D. Tex. Feb. 20, 2020).

Accordingly, for this reason alone, the Court may grant Jersey Village's motion to dismiss and dismiss Plaintiff's claims. Nonetheless, Plaintiff's second amended complaint fails to sufficiently state a *Monell* claim against Jersey Village.

Assuming without deciding that officers lacked probable cause to arrest Plaintiff,[8] the Court finds that Plaintiff fails to sufficiently allege that Jersey Village's purported failure to train or supervise constituted deliberate indifference to Plaintiff's Fourth Amendment right and Plaintiff fails to establish the extreme circumstances required to allege a ratification theory of liability.

### B.      Standard For Municipal Liability.

Municipalities are considered "persons" who may be sued directly under § 1983. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). However, "'a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents.'" *Fetty v. City of Baton Rouge*, 534 F. Supp. 3d 616, 624 (M.D. La. 2021) (quoting *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999)). "A municipality is liable only for acts directly attributable to it through some official action or imprimatur." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citation omitted).

To establish municipal liability under § 1983, a plaintiff must prove three elements: "'(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom.'" *Fetty*, 534 F. Supp. 3d at 624 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.

---

[8] As a result, the Court need not consider certain documents, namely the witness statements and offense reports, attached to Jersey Village's motion to dismiss in deciding that Plaintiff has failed to state a claim.

2001)). A local government may be sued under § 1983 "'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers.'" *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). "'Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 717 (W.D. Tex. 2015) (quoting *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000)).

The failure to train municipal employees may also constitute a "policy," but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Thus, although municipalities are not normally liable for inadequate training of employees, failure to properly train constitutes an actionable "policy" if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390.

**C.     Plaintiff's Failure To Train or Supervise Claim Fails.**

A municipality may be liable under § 1983 for failing to train its police

officers. *See Roundtree v. City of San Antonio, Tex.*, No. SA18CV01117JKPESC,

2022 WL 903260, at *7 (W.D. Tex. Mar. 28, 2022) (citing *City of Canton*, 489 U.S.

at 388; *Piotrowski*, 237 F.3d at 581). "To succeed, the plaintiff must demonstrate

that: '(1) the city failed to train or supervise the officers involved; (2) there is a causal

connection between the alleged failure to supervise or train and the alleged violation

of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate

indifference to the plaintiff's constitutional rights.'" *Edwards v. City of Balch*

*Springs, Tex.*, 70 F.4th 302, 312 (5th Cir. 2023) (quoting *Pena v. City of Rio Grande*

*City*, 879 F.3d 613, 623 (5th Cir. 2018)). "Failure to train cannot be alleged by the

simple assertion that the occurrence of the incident proves the need for additional or

different training." *Garcia v. Harris Cnty.*, No. CV H-22-198, 2022 WL 2230469,

at *2 (S.D. Tex. June 2, 2022), *report and recommendation adopted*, No. CV H-22-

198, 2022 WL 2222972 (S.D. Tex. June 21, 2022).

In his second amended complaint, Plaintiff alleges:

It was the policy and/or custom of the City to inadequately supervise
and train its police officers, including Officers [Areceneaux, Hall, and
Corporal Boughter] thereby failing to adequately discourage further
constitutional violations on the part of its police officers. The City did
not provide appropriate in-service training or retraining of officers who
were known to engage in police misconduct in entering a private
residence and confronting a family situation or provide alternatives
other than wholesale destruction of personal rights and privacy.

ECF No. 41 ¶ 52. Plaintiff specifies that Jersey Village failed to properly train or supervise officers: "to properly and readily and meaningfully identify the difference between right to freely associate and have personal relations;" "to properly approach a private residence to determine whether further intervention would be proper without causing further harm to the residents or their guests;" and "to appropriately and proportionately respond to a family situation and or private situation and the amount of intrusion and or invasion of privacy reasonable for the situation." *Id.* ¶¶ 46–48. Plaintiff also seems to argue that Jersey Village failed to train their officers in encounters with other peace officers as potential suspects or defendants. *Id.* ¶ 70.

"Deliberate indifference may be proven in one of two ways." *Jackson v. Valdez*, 852 F. App'x 129, 136 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 863 (2022) (citing *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018)). "First, 'municipal employees will violate constitutional rights 'so often' that the factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the . . . policymakers.""" *Id.* (quoting *Littell*, 894 F.3d at 624) (quoting *Canton*, 489 U.S. at 390 n.10)). "Absent proof of pattern, deliberate indifference can still be inferred in a limited set of cases, where 'evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, [can] trigger municipal liability.'" *Id.* (quoting *Bd. of Cnty.*

*Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997) (citing *Canton*, 489 U.S. at 390)). "This 'single-incident' exception applies when 'the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy.'" *Id.* (quoting *Littell*, 894 F.3d at 624 (quoting *Brown*, 520 U.S. at 409)). The "'single incident exception is extremely narrow,' and as an exception to the pattern requirement, it 'is generally reserved for those cases in which the government actor was provided no training whatsoever.'" *Edwards*, 70 F.4th at 312–13 (quoting *Valle*, 613 F.3d at 542; *Pena*, 879 F.3d at 624); *see also Garcia*, 2022 WL 2230469, at *4 ("The single incident exception also requires that no training was provided to the subordinate.").

Nowhere in his second amended complaint does Plaintiff demonstrate a pattern of deliberate indifference related to the alleged training or supervision failures—Plaintiff does not allege any similar incidents or statistics involving domestic violence arrests, illegal entries, or investigations. *See Pinder v. Skero*, No. 4:16-CV-03479, 2017 WL 11612501, at *10 (S.D. Tex. Sept. 6, 2017) ("Pinder's Amended Complaint states that Skero was involved in two prior arrest incidents in which he '[d]isplayed an unreasonable show of force' and 'grabbed, pushed, and drug' individuals who posed no threat to him. Pinder further alleges that Skero '[m]isrepresented facts in offense reports and subsequent testimony regarding the[se] incidents.'"); *Barr v. City of San Antonio*, No. CIVASA-06-CA-0261-XR,

2006 WL 2322861, at *4 (W.D. Tex. July 25, 2006) (denying motion to dismiss where plaintiff alleged, without further detail or citation, that city had been named a defendant in four similar lawsuits); *Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 955 (N.D. Tex. 2014) (holding that statistics showing "the shooting of 12 other unarmed individuals by DPD members in 2013," "the deaths of over 60 unarmed African–American men at the hands of DPD officers since 2001," and "the 94 open internal affairs investigations relating to officer-involved shootings" was sufficient to show deliberate indifference at motion-to-dismiss stage).

Plaintiff's allegation that "a far greater number of minority citizens face being arrested or ticketed than non-minorities" is insufficient to prove deliberate indifference. ECF No. 41 ¶ 68. Plaintiff fails to flesh out this conclusory allegation— namely, Plaintiff does not demonstrate that these arrests or citations establish a pattern of constitutional violations, much less a pattern of violations that makes the need for further training "plainly obvious" to the policymaker. *See Flanagan*, 48 F. Supp. 3d at 955.[9] Additionally, to the extent Plaintiff alleges that termination of the prior police chief establishes deliberate indifference, it is completely unclear how

---

[9] To the extent Plaintiff seeks to raise a claim of racial profiling or discrimination, Plaintiff's second amended complaint lacks sufficient allegations. *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) ("To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'") (quoting *Priester v. Lowndes Cnty.,* 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir. 2001) (per curiam))).

this incident is indicative of a pattern of similar violations demonstrating the need for further training. *See* ECF No. 41 ¶ 68 ("The City manager around the time of this incident fired its long-standing police chief due in retaliation for the chief bringing to the attention serious allegations of misconduct of the officers. The involved officers were not investigated or known to be punished."). Furthermore, insofar as Plaintiff proffers his allegations regarding the revenue generated by Jersey Village citations as proof of a pattern of deliberate indifference, these allegations lack the specificity needed for the Court to discern that violations of constitutional rights must happen so often that it is plainly obvious to the policymaker(s) that additional training was needed. In other words, Plaintiff fails to allege how an increase in citation revenue would trigger the policymaker to conclude that citizens' constitutional rights were being violated such that additional training was necessary.

Similarly, Plaintiff's attempt to establish deliberate indifference under the single incident exception fails. ECF No. 47 at 14–16. "[A]ll peace officers in Texas are required to complete hiring, training, and licensing requirements of [TCOLE] before serving as police officers, and the standards established by TCOLE have been found to comply with constitutional requirements and to be adequate to enable peace officers to deal with usual and recurring situations that peace officers encounter." *Chadwick v. City of Missouri City*, No. CIV.A. H-13-2151, 2014 WL 5901978, at *11 (S.D. Tex. Nov. 12, 2014). "[T]he State Legislature, via Texas Occupations

Code section 1701.253, has mandated that TCOLE establish statewide education and training programs on civil rights and mental impairments and that compliance with the TCOLE standards exceeds basic constitutional requirements for training." *Id.* Indeed, Texas Occupations Code § 1701.253(b)(1) states "the commission shall require courses and programs to provide training in the recognition, investigation, and documentation of cases that involve . . . family violence . . ., including the use of best practices and trauma-informed response techniques to effectively recognize, investigate, and document those cases." Tex. Occ. Code Ann. § 1701.253(b)(1).

Here, each of the complained-of officers were TCOLE-certified who had received basic TCOLE-compliant training. ECF No. 42-3.[10] Specifically, Officer Arceneaux completed the basic peace officer course and courses in "crisis intervention," "cultural diversity," "arrest, search, and seizure," and "racial profiling." *Id.* at 3–7. Officer Hall completed the basic peace officer course and courses in "crisis intervention," "cultural diversity," "arrest, search, and seizure," "family violence," "domestic violence – response network," and "racial profiling."

---

[10] Jersey Village asks the Court to take judicial notice of Officer Arceneaux, Officer Hall, and Corporal Boughter's Texas Commission on Law Enforcement ("TCOLE") Personal Status Reports. "According to [] TCOLE, a police officer's 'personal status report, a report of [his] training, certificates, and length of service is a public record and releasable to anyone that requests under Chapter 552 of the Government Code (Open Records Act).'" *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 328 (E.D. Tex. 2021) (quoting *Frequently Asked Questions*, TEXAS COMMISSION ON LAW ENFORCEMENT, www.tcole.texas.gov/content/ frequently-asked-questions (last accessed November 2, 2023)). As such, the Court takes judicial notice of the TCOLE reports. *See id.*

*Id.* at 8–14. Corporal Boughter completed the basic peace officer course and courses in "family violence," "arrest, search, and seizure," cultural diversity," "racial profiling," and "crisis intervention." *Id.* at 15–26. Based on the above, Plaintiff cannot plausibly allege that the complained-of officers received no training whatsoever, or that the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the alleged training inadequacy.

Plaintiff's argument that the Officers' TCOLE training is insufficient misses the mark. To meet the single incident exception, Plaintiff must demonstrate that "no training was provided to the subordinate," not that the subordinate received unsatisfactory training. *See Garcia*, 2022 WL 2230469, at *4 ("The single incident exception also requires that no training was provided to the subordinate."). Accordingly, the single incident exception is inapplicable here—Plaintiff has failed to allege Jersey Village's deliberate indifference. The City's motion to dismiss is granted as to Plaintiff's failure to train or supervise claim.[11]

---

[11] It does not appear from Plaintiff's second amended complaint or his response to the motion to dismiss that he raises a city policy claim—instead, his mentions of policy appear to involve Jersey Village's purported "policy" of not training or supervising its officers. *See* ECF Nos. 41; 47. However, insofar as Plaintiff seeks to raise a *Monell* claim that Jersey Village had a policy in place of effecting false arrests or illegal entries into residences, the Court finds that Plaintiff has failed to state a claim. The second amended complaint is devoid of factual allegations demonstrating the existence of a policy statement, ordinance, regulation, or officially adopted decision, or allegations demonstrating a persistent, widespread practice so common and well settled as to constitute a custom. As Jersey Village points out, the only incident alleged is Plaintiff's own arrest. ECF No. 42 at 15. This is insufficient to state a *Monell* claim based on City policy or custom. *See Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 863 (2022) (plaintiff's allegations of two incidents of strip searches of transgender female detainees and four

**D.      Plaintiff's Theory of Ratification Fails.**

Plaintiff also appears to rely on a theory that Jersey Village is liable because

it ratified its subordinates' misconduct. *See* ECF No. 47 at 14–15. In support of this

theory, Plaintiff asserts that:

> In this instance, sufficient facts have been plead that there was not
> sufficient evidence to result in the immediate arrest of Plaintiff when
> the purported victim, a law enforcement officer, clearly indicated there
> were no problems and obviously a misinterpretation. This was not
> sufficient and the supervisor knowing the involved law officers were
> both Hispanic, similarly certified by TCOLE, claimed there was no
> issues warranting intervention was insufficient for the supervising
> Officer. He escalated the issue using his self-determined importance of
> unreliable information that was rejected by the on-call district attorney
> to forge ahead with an arrest that was simply unjustified.

*Id.* at 14–15.

"[R]atification by a municipality's policymakers of a subordinate's conduct is

chargeable to the municipality because a policymaker's decision is final." *York v.*

*Welch*, No. 1:18-CV-522, 2019 WL 10271216, at *12 (E.D. Tex. Aug. 12, 2019)

(citing *Praprotnik*, 485 U.S. at 127). "A municipality may be held liable under

*Monell* under the theory of 'ratification,' if an authorized policymaker approves a

subordinate's actions and the improper basis for it." *Garcia*, 2022 WL 2230469, at

*4 (citing *Praprotnik*, 485 U.S. at 127). "The precise standard by which to plead a

ratification theory is somewhat unclear" in this circuit. *Id.* (quoting *Taylor v.*

---

incidents of sex-based classifications of two transgender detainees, in span of five years, was
insufficient to show that county had custom and policy of strip searches and classifications of
transgender detainees solely based on their gender).

*Hartley*, 488 F. Supp. 3d 517, 537 (S.D. Tex. 2020)). "Certainly, ratification may form the basis for *Monell* liability if there is knowing approval by a policymaker of both the conduct and its underlying, improper basis." *Id.* (citing *Taylor*, 488 F. Supp. 3d at 537). "A plaintiff may be able to support a *Monell* claim by showing that an official policymaker came to the defense of a subordinate's manifestly indefensible conduct." *Id.* (citing *Taylor*, 488 F. Supp. 3d at 537). And finally, some precedent suggests that ratification is limited to extreme factual situations. *Id.* (citing *Taylor*, 488 F. Supp. 3d at 537); *see also York*, 2019 WL 10271216, at *12.

Throughout his complaint, Plaintiff offers only conclusory allegations regarding ratification, without describing how Jersey Village approved of its subordinate's misconduct. For example: (1) "[t]his action is against Defendant City for its practices, customs and policies, failure to enforce policies, or creating an atmosphere that allowed its police officers to believe that their actions are not subject to meaningful scrutiny or review or discipline all of which leads to the deprivation of Plaintiff's rights within the meaning of § 1983," ECF No. 41 ¶ 45; (2) "allowing and encouraging officers to believe and act as if they are not subject to the same laws and are absolutely immune from oversight, discipline, or their actions are always justified regardless of the lack of reasonableness because they purportedly act under the color of law," ECF No. 41 ¶ 49; and (3) "Defendant City directly or indirectly, under color of state law, approved or ratified the unlawful, deliberate, malicious,

reckless, and wanton conduct of police officers heretofore described," ECF No. 41 ¶ 53. Plaintiff's second amended complaint fails to show Jersey Village approved of the purported unconstitutional conduct, much less how the policymaker knew of training issues or defended officers' unconstitutional conduct and fails to set forth a set of extreme factual circumstances.[12] *See York*, 2019 WL 10271216, at *12.

In sum, Jersey Village's motion to dismiss Plaintiff's *Monell* claims is granted.

### E.    The Court Denies Plaintiff Leave To Amend and Dismisses His Claim With Prejudice.

Plaintiff seeks leave to amend his claims against Jersey Village. ECF No. 47 at 18–20. Rule 15 directs courts to "freely give leave [to amend the pleadings] when

---

[12] Regarding extreme factual circumstances, the *York* court explained:

> In *Grandstaff*, a group of police officers "poured" gunfire on a man they mistook for a fugitive. 767 F.2d at 167–68. The evidence reflected "repeated acts of abuse" leading to the man's death. *Id.* at 171. In addition, in the aftermath of the case, several police officers were evasive and contradictory in their testimony. *Id.* at 166. One officer even sold his weapon, which had been fired into the victim's home during the incident, without it ever being inspected by the police department. *Id.* at 166 n.1. The *Grandstaff* court was incredulous that there were "no reprimands, no discharges, and no admissions of error" following the incident, finding that plaintiffs had provided sufficient evidence to conclude that "it was accepted as the way things are done and have been done in the city." *Id.* at 171. "[The Fifth Circuit] expressly limited *Grandstaff* 'to the extraordinary facts of the case,' declaring that [its] opinion 'can be applied only to equally extreme factual situations.'" *Lopez-Rodriguez v. City of Leveland*, 100 F. App'x 272, 274 (5th Cir. 2004) (quoting *Snyder*, 142 F.3d at 797-98 (refusing to find ratification in a case in which an officer shot a fleeing suspect in the back "given the absence of evidence suggesting a culture of recklessness in the [police department]")); *Schaefer*, 121 F. Supp. 3d at 721 (citing *Davis*, 2009 WL 1226904, at *8).

*York*, 2019 WL 10271216, at *12.

justice so requires." FED. R. CIV. P. 15(a)(2). Generally, courts "give the plaintiff a chance to amend before dismissing the action with prejudice, unless amendment would be futile." *Kennard v. City of Hous.*, No. CV-H-22-3365, 2023 WL 159782, at *2 (S.D. Tex. Jan. 11, 2023) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002)). Courts may also deny leave to amend when the plaintiff "fail[s] to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies." *Mandujano v. City of Pharr, Tex.*, 786 F. App'x 434, 437 (5th Cir. 2019) (citing *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017)). Plaintiff has filed his complaint three times already, ECF Nos. 1, 27, 41; 17—twice with the benefit of pending motions to dismiss outlining potential inadequacies in the pleadings, ECF Nos. 7, 8, 30, 32—and has neither submitted a proposed third amended complaint nor explained how he would cure the deficiencies described above. *See* ECF No. 41. Therefore, Plaintiff has provided the Court with no basis to believe that further amendment would be fruitful.

Based on this record, the Court finds a third amendment of the complaint would be futile and dismisses the second amended complaint against Jersey Village with prejudice. *Doe v. Harris Cnty., Tex.*, No. CV H-21-03036, 2022 WL 17842969, at *7 (S.D. Tex. Nov. 17, 2022) (dismissing § 1983 complaint with prejudice where court determined amendment would be futile).

## V.    CONCLUSION

Therefore, Jersey Village's Motion to Dismiss, ECF No. 30, is **GRANTED**

and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

SIGNED at Houston, Texas, on November 2, 2023.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**